MORRIS *v.* SOUTHWESTERN SUPPLY COMPANY.

Opinion delivered December 2, 1918.

1.  SALES—SUBSTITUTION OF CONTRACTS.—Where appellant purchased a 50 H. P. Adams engine to be used in pumping water for rice fields at a stipulated price payable in installments, and, upon the engine proving unsatisfactory, entered into a new contract for the purchase of a 60 H. P. engine, which was furnished at the same price and basis, the new contract reciting: "Order for 50 H. P. Adams engine formerly taken is hereby cancelled," the second contract was a substitution for and cancellation of the old contract, and the rights of the parties were concluded by the terms of the new contract.

2.  EVIDENCE—PAROL EVIDENCE TO VARY WRITING.—Where a second contract by its express terms abrogated the first contract entered into between the parties, it is inadmissible to prove by parol testimony that there was no intention to abrogate the first contract.

3.  EVIDENCE—PAROL EVIDENCE TO VARY WRITING.—A written order specifying the terms of the sale of an article, properly signed by the parties, constitutes a written contract, protected by the rule of evidence against variance by oral testimony.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*Carmichael & Brooks,* for appellant.

1. The making of the new contract did not cancel and rescind the first contract. 90 Ill. 86; Black on Rescission & Cancellation, etc., § 8; 6 L. R. A. 503; 76 Ga. 3; 149 Mass. 271; 59 Pac. 162; 84 Atl. 811. There must be a mutual revocation, a specific agreement to rescind the old contract. 45 S. E. 374-5. The party must be put *in statu quo.* 25 Ark. 190.

2. The second engine was of no value, was never accepted and was held subject to the order of appellee. No rescission was worked by estoppel.

3. There was no rescission, but the question should at least have been submitted to a jury. Black on Rescission & Cancellation, etc., § 8; 93 Ark. 452; 26 *Id.* 309.

4. All the facts should have been submitted to a jury as there were questions of fact to be decided. It was error to direct a verdict. *Supra.*

*Cohn, Clayton & Cohn,* for appellee.

1. The old contract was rescinded by the new order. 95 Ark. 421; 74 *Id.* 16; 76 *Id.* 371; 96 *Id.* 606; *Ib.* 81; 110 *Id.* 68; 110 *Id.* 123.

2. The mutual release of the parties to the contract from their obligations was a sufficient consideration for the rescission. 98 Ark. 219, 221; 119 N. Y. 1; 6 L. R. A. 503; 156 Pa. 276; 27 Atl. 162; 166 Ala. 146; 51 So. 884; 98 Ark. 219. But an independent consideration was shown by furnishing a new and larger engine at the same price.

3. A new contract was made covering the subject matter inconsistent with the first, which was abrogated. 92 Ark. 254; 112 *Id.* 227; 3 Elliott on Contracts, § 1865. The first contract was rescinded by express agreement and by execution of a new contract. The principle of revocation applies and not that of accord and satisfaction. The last engine was received and accepted and used, giving satisfaction. The attempted rescission came too late and had no effect. 95 Ark. 488; 81 *Id.* 549; 53 *Id.* 155, 159.

4. The second contract was clear and unambiguous and it was the duty of the court to construe it. 112 Ark. 165. Parol testimony was properly excluded as the contract was complete and unambiguous. 112 Ark. 165; 102 *Id.* 428.

5. There was no question for a jury and a verdict was properly directed. No damages were proven. 72 Ark. 275, 286-7; 128 *Id.* 167. If there was a breach only nominal damages were recoverable, and this court will not reverse for failure to assess such. 110 Ark. 144; 108 *Id.* 357; 106 *Id.* 559; 106 *Id.* 274.

McCULLOCH, C. J. Appellant is a rice grower in Lonoke County, and in the year 1916 he purchased from appellee an engine to use in pumping water with which to flood the rice fields in the proper season. There was a written contract in the form of an order signed by appellant and accepted by appellee, and the engine was described as "One 50 H. P. Adams Kerosene Stationary Engine." The agreed price of $1,500 was payable in installments, and the contract contained the following stipulation:

"This order is given to you with the understanding that you guarantee the goods to be as represented in the catalog. No verbal understanding is to be considered or have any effect on this contract."

There was a short delay in delivering the engine according to contract, but it is not contended that any damage arose by reason of that delay, and the engine delivered and set up and put into operation proved to be defective and unsatisfactory. Appellee attempted to have the defects corrected, but was unable to get the engine to work satisfactorily. After considerable delay in endeavoring to get the engine to work, the parties entered into a new agreement whereby appellee undertook to furnish a new engine instead of the engine furnished under the contract. That agreement was in the same form as the original agreement, that is to say, in the form of a

written order signed by appellant and accepted by appellee. The new contract contained the following clause:

"60 H. P. oil turn to be furnished to W. N. Morris at the same price and basis that the 50 H. P. Adams engine was to be furnished. Engine to be ordered out at once by wire "F" to remain his until other engine installed. Order for 50 H. P. Adams engine formerly taken is hereby cancelled."

Pursuant to the terms of the contract, appellee furnished the engine, which was accepted by appellant and was put into operation and proved satisfactory. Appellant claims that he was damaged in a large sum of money by reason of the failure of the engine furnished under the first contract to do the proper work in pumping water, and that in consequence of the unsatisfactory work of the engine the rice crop failed to produce.

Appellant instituted this action in the circuit court of Pulaski County against appellee to recover the damages alleged to have been sustained by reason of the breach of the first contract, and appellee, in addition to setting up the second contract as a rescission of the first contract, presented a counter-claim in the sum of $1,450, the unpaid price of the engine. On the trial of the case the court gave a peremptory instruction to the jury in favor of appellee for the recovery of the price of the engine, and judgment was rendered against appellant for that sum with interest.

The instruction of the court was based upon the theory that the execution and performance of the new contract operated as a substitution for and cancellation of the old contract and the rights of the parties were concluded by the terms of the new contract. We think the court was correct in taking that view of the law as applicable to the facts of this case. The controlling principle of law was stated by this court in the case of *Ozark & Cherokee Central Railway Co.* v. *Ferguson,* 92 Ark. 254, where we quoted with approval the following from an encyclopedia:

"The discharge may take the form either of a total obliteration of all contractual relations between the parties in regard to the subject-matter of the contract, or it may be effected by the substitution of a new agreement in place of the old one. In such case the new agreement takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged; in other words, a contract may be rescinded in part and stand as to the residue." 9 Cyc. 595.

That case was followed and the principle announced reaffirmed by this court in the more recent case of *Murray* v. *Miller,* 112 Ark. 227. Other authorities among the judges and text writers are numerous. Mr. Black in his work on Rescission and Cancellation of Contracts (section 8) states the rule peculiarly applicable to the facts of this case as follows:

"Since it is always in the power of the parties to a contract to rescind or abrogate it by their mutual consent, they may accomplish this result by the substitution of a new contract, implying a mutual discharge from reciprocal obligations under the original contract and the restoration of the *status quo* or compensation for altered conditions, provided that the new contract shall be complete and binding in itself, and shall embrace each and all of the parties to the original contract. * * * Where articles purchased are found unsatisfactory or unsuited to their purpose and are returned to the vendor, and others furnished in their place and accepted, this effects a rescission of the original contract of sale, so that no claims for damages can be founded on it. * * * The important matter to be noticed in this connection is that if a contract is rescinded by the making of a new agreement, all rights under the original contract are gone, and no claims can be founded upon it, either in respect to compensation for breach of the new contract or for injuries sustained under the old." See also 3 Page on Contracts, § § 1339 and 1340.

Appellant offered to show by his own testimony that there was no intention to abrogate the old contract by the execution of the new, but the court was correct in refusing to permit that to be done, for the effect of the introduction of such oral testimony would have been to vary the terms of the written contract. *Cherokee Construction Co.* v. *Prairie Creek Coal Mining Co.,* 102 Ark. 428.

It is also argued that the new contract was a mere order for the engine, and not a written contract in the sense that its terms could not be varied by oral testimony. The argument is unsound, however, for the reason that a written order specifying the terms of the sale of an article, properly signed by the parties, constitutes a written contract, protected by all the rules of evidence against variance by oral testimony.

Our conclusion, therefore, is that the case was properly tried in the court below, and, as there is no error in the proceedings, the judgment must be affirmed. It is so ordered.