RAINWATER *v.* MERCHANTS' NATIONAL BANK.

Opinion delivered December 6, 1926.

1. BANKS AND BANKING—AUTHORITY OF BANK COMMISSIONER.—Under Acts 1921, No. 496, the Bank Commissioner, as receiver of an insolvent bank, is entitled to institute action on behalf of the bank's creditors against a depository bank which knowingly participated in a transfer of a deposit of the insolvent bank constituting a wrongful preference.

2. BANKS AND BANKING—UNLAWFUL PREFERENCE—NOTICE.—Where a director of an insolvent bank transferred a bank deposit belonging to the firm of which he was manager to the credit of the bank to raise its cash reserve as required by Crawford & Moses' Dig., § 692, under stipulation that the fund could be withdrawn only by his authority, *held* that the deposit was general and not special, and the director's subsequent application of the balance to payment of his firm's note to the depository bank was not of itself sufficient to put such bank on notice that such payment constituted an unlawful preference of the firm, within Acts 1921, No. 496.

3. BANKS AND BANKING—UNLAWFUL PREFERENCE—NOTICE.—Where it was customary for banks to transfer funds on telephone orders with same effect as if checks were drawn, the withdrawal of an insolvent bank's deposit on verbal orders of its directors did not put the depository bank on notice that such withdrawal was an unlawful preference, under Acts 1921, No. 496.

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.— The findings of fact of the chancery court will not be disturbed on appeal unless against the preponderance of the testimony, and this rule applies to inference as well as to direct proof.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland*, Chancellor; affirmed.

*Moore, Smith, Moore & Trieber,* for appellant.

*Daily & Woods,* for appellee.

*Norwood & Alley,* for Dover Mercantile Company.

McCULLOCH, C. J. The Bank Commissioner, as receiver in charge of the defunct Bank of Hatfield, instituted this action against the Merchants' National Bank of Fort Smith, to recover the sum of $10,268.11, held on deposit by appellee bank to the credit of the Bank of Hatfield after the latter became insolvent, and alleged to have been wrongfully diverted from the use of the Bank of Hatfield and paid over to the T. M. Dover Mercantile Company as a preferred creditor of the Bank of Hatfield. The answer of appellee, Merchants' National Bank, contained appropriate denials of all the allegations as to knowledge of insolvency on the part of the Bank of Hatfield, and the cross-complaint against the T. M. Dover Mercantile Company prayed for a decree over and against that concern, in the event that the court should find that the Merchants' National Bank was liable to the Bank Commissioner as receiver for the Bank of Hatfield. The cause was heard by the court upon the pleadings and an agreed statement of facts, and a decree was rendered dismissing the complaint of appellant for want of equity.

The Bank of Hatfield was a banking institution doing business at the town of Hatfield, in Polk County, Arkansas, and M. J. Dover was a stockholder and director of the bank. He was also the managing officer of the Dover Mercantile Company, a concern doing business at the town of Hatfield.

During the latter part of January, 1923, the Bank Commissioner discovered, on examination, that the Bank of Hatfield had permitted its cash reserve to fall below the statutory requirement (Crawford & Moses' Digest, § 692) of fifteen per cent. of its deposits, and he made demand on the Bank of Hatfield to comply with the statute by raising its cash reserve. Pursuant to this order of the Bank Commissioner, M. J. Dover, acting for the Bank of Hatfield, applied to its regular correspondent in Fort Smith, the First National Bank of Fort Smith, for a loan

of money to be held as its cash reserve, but that institution refused to make the loan, and Dover then applied to appellee, Merchants' National Bank, for a loan of $20,000. At that time the Dover Mercantile Company had a large sum on deposit with the Bank of Hatfield, and was interested in seeing that the solvency of the bank and its capacity to do business were preserved. The Dover Mercantile Company also had on deposit with the Merchants' National Bank of Fort Smith the sum of $8,832.34. Appellee, Merchants' National Bank, agreed with Dover to make the loan, and, pursuant to that agreement, the deposit of $8,832.34 was charged to the mercantile company and credited to the Bank of Hatfield, and the loan of $20,000 was made to the mercantile company and also credited to the account of the Bank of Hatfield, thus making a deposit to the credit of the Bank of Hatfield in the total sum of $28,832.34. In this manner the cash reserve of the Bank of Hatfield was raised to conform to the statutory requirement.

M. J. Dover, acting for the mercantile company, executed to the appellee bank a note for $20,000 to cover the loan. At the time of these transactions it was agreed between appellee bank and M. J. Dover, acting for the Bank of Hatfield, that the money thus deposited to the credit of the Bank of Hatfield could be withdrawn only on checks signed or approved by M. J. Dover, and a deposit card was signed and delivered pursuant to that agreement. The funds were drawn against from time to time, in accordance with this agreement, from then until the time the bank closed its doors, and the amount on deposit fluctuated, at one time the amount being reduced to about $6,000. On October 17, 1923, the balance of the deposit on hand with appellee bank to the credit of the Bank of Hatfield was $10,268.11, the sum sued for in this action. Prior to that date, the mercantile company had paid its note to appellee bank down to $10,000 and had executed its renewal note for that amount to appellee bank, and the note had not become due on the date last mentioned above. On the morning of that day, October

17, 1923, at 8 o'clock, M. J. Dover called the cashier of the appellee bank over the telephone and gave verbal instructions that $10,000 of the sum remaining to the credit of the Bank of Hatfield be applied on the note of the mercantile company to the bank, that the note be canceled, and that the remaining sum of $268.11 be remitted to the mercantile company by check and charged to the Bank of Hatfield, thus entirely wiping out the deposit and balancing the account. On the day before this occurred, the Bank of Hatfield had drawn and forwarded various checks, payable to its regular customers, aggregating the sum of $5,000, the checks being drawn on the First National Bank of Fort Smith, and, on the same day, drew a check on appellee bank in favor of the First National Bank to cover those remittances to customers. And, in the telephone conversation between M. J. Dover and the cashier of appellee bank, instructions were given to refuse payment on the $5,000 check drawn in favor of the First National Bank of Fort Smith.

Immediately after these transactions occurred between Dover and appellee bank, Dover gave instructions to the Bank of Hatfield to charge the deposit in appellee bank to the mercantile company, and also on that day appellee bank forwarded a charge ticket to the Bank of Hatfield. The Bank Commissioner was immediately notified that morning of the insolvency of the bank, which was closed and ceased to do business, and the Bank Commissioner took physical charge of the affairs of the bank two days later, that is to say, on October 19, 1923.

It is agreed in the statement of facts that the Bank of Hatfield was insolvent on October 17, 1923, and had been insolvent for a considerable time theretofore; that "the Merchants' National Bank had no knowledge of the insolvency of the Bank of Hatfield on October 17, 1923, but the statement last made does not preclude plaintiff from arguing inferences of knowledge on the part of said Merchants' National Bank from facts appearing in this statement." There is also a paragraph in the agreed

statement of facts which reads as follows: "It is customary for banks to make transfers of funds on 'phone orders with the same effect as if checks were drawn." It was also agreed that appellee bank was never advised of the fact that Dover had applied to the First National Bank to borrow funds, or that the funds were borrowed for the purpose of raising the cash reserve on the demand of the Bank Commissioner. It also appears in the agreed statement of facts that examinations of the Bank of Hatfield were duly and regularly made by the Bank Commissioner between the date of the deposit with appellee bank and the failure of the Bank of Hatfield, and that the bank examiner had forwarded to appellee bank a reconcilement statement to be verified by appellee bank concerning the amount of funds deposited to the credit of the Bank of Hatfield.

The statutes of this State regulating the banking business (§ 7, act No. 496, session of 1921) prohibit unlawful preferences by banks in contemplation of the Bank Commissioner taking charge of the assets and property of the bank, and this suit is maintained by the Bank Commissioner on the theory that the transactions hereinbefore set forth, in disposing of the funds deposited with appellee bank, constituted an unlawful preference in favor of the Dover Mercantile Company, and that appellee bank is liable for the funds by reason of having knowingly participated in the wrongful act. The theory is correct, and, if the evidence in the case sustains a finding that appellee bank participated in the unlawful act, the Bank Commissioner is entitled to recover for the creditors of the defunct bank the amount of funds thus wrongfully diverted.

It is perfectly clear, from the facts recited in the agreement, that the transfer of funds on deposit with appellee bank was made by Dover for the express purpose of giving a preference to the mercantile company, of which he (Dover) was the managing officer. A different question of fact, however, is presented with reference to the attitude of appellee bank. It is true that

Dover committed a wrongful act for the benefit of the mercantile company, but he was clothed with express authority to withdraw the funds from appellee bank for the purpose of transferring the same to any of the creditors or customers of the Bank of Hatfield. It was expressly stipulated that the funds could only be withdrawn by the authority of Dover acting for the Bank of Hatfield. The funds thus deposited constituted a general deposit and not a special one, notwithstanding the fact that the method of withdrawal was restricted. Therefore Dover had the authority to withdraw the funds, and the fact that the transfer was in favor of the mercantile company, of which Dover was the managing officer, was not of itself sufficient to put appellee bank upon notice that the withdrawal was wrongful.

These facts do not present a case where the act done was, on its face, one for the benefit of the actor himself so as to charge the person being dealt with with knowledge of that fact. Nor did the fact that the withdrawal of funds was verbal instead of by check necessarily constitute such an irregularity as to put the bank on notice that the withdrawal was wrongful. According to an express recital in the agreed statement of facts, it was customary for transfers of funds to be made on telephone orders; therefore we are not at liberty to treat the fact that it was a telephone message as a suspicious circumstance to be given any considerable force in the case. There was also, as we have already shown, an express agreement in the record that appellee bank had no knowledge of the insolvency of the Bank of Hatfield at the time the funds were withdrawn. There is a reservation in the agreement that this did not "preclude plaintiff from arguing inferences of knowledge upon the part of said Merchants' National Bank from facts appearing in this statement," but we construe the whole of the stipulation on this subject to mean that there was no actual knowledge on the part of appellee bank as to the insolvency of the Bank of Hatfield, and that the question was to be left open as to inferences which might or might not be

drawn from the stipulated facts sufficient to put the bank upon inquiry. We therefore have before us an express stipulation that there was no actual knowledge of insolvency, and a finding by the trial court that the facts stipulated did not warrant inferences sufficient to put appellee bank on notice of such insolvency and wrongful diversion of funds. The well-settled rule here is that the findings of the chancery court will not be disturbed unless found to be against the preponderance of the testimony, and this applies to inferences as well as to direct proof.

There is, on the side of appellant, the fact that the funds were withdrawn early in the morning, before banking hours, and in a telephone conversation instead of by check, and that the funds were transferred to the mercantile company of which Dover was the manager. There might be drawn an inference of more or less force that the withdrawal was irregular and was for the benefit of the mercantile company, and not for the Bank of Hatfield. On the other hand, there is, on the side of appellee bank, as we have already seen, the agreement that the withdrawal of funds on verbal orders was in accordance with customary methods, and that appellee bank had no knowledge of the insolvency of the Bank of Hatfield. There is also the fact that the funds on deposit to the credit of the Bank of Hatfield were placed there by the mercantile company and that the latter was a creditor, to that extent at least, of the Bank of Hatfield. We are therefore unable to say, with any degree of certainty, that the trial court erred in declining to draw an inference of knowledge on the part of appellee bank that the withdrawal of the funds in favor of the mercantile company was for the purpose of consummating an unlawful preference to the mercantile company as a creditor of the Bank of Hatfield.

This being the state of the record, it becomes our duty to leave the finding undisturbed and to affirm the decree. It is so ordered.