FARELLY LAKE LEVEE DISTRICT *v.* McGEORGE.

Opinion delivered December 20, 1926.

1. LEVEES—LIQUIDATED DAMAGES—WAIVER.—Provision of a contract for construction of floodgates that an extension of time for completion "shall waive no other obligation of the contractor or of the sureties" did not prevent such extension from operating as a waiver of a claim for liquidated damages on account of delays before the end of the extension period.

2. LEVEES—EXTENSION OF TIME—WAIVER OF LIQUIDATED DAMAGES.—Provision of a contract for construction of floodgates that mere permission to continue and finish the work after the time fixed for its completion should not operate as a waiver of the right to liquidate damages for delay *held* not to prevent an extension of time for completion from amounting to a waiver of a claim for such damages, as the extension constituted a new contract, into which the requirements of the original contract were merged.

3. LEVEES—EXTENSION OF TIME—LIQUIDATED DAMAGES.—Where the original contract for construction of floodgates provided that charges for liquidated damages should be made for such only as accrued after the expiration of periods of extension, a resolution of the levee board extending the time for completion and reciting that the board does not waive any claim of liquidated damages due up to this date *held* not a new contract for payment of damages, and there could be no claim for damages under the original contract.

4. LEVEES—EXTENSION OF TIME—WAIVER OF DAMAGES.—Extension of the time to complete floodgates released the contractor and his sureties from common-law liability for actual damages sustained on account of prior delay.

5.  LEVEES—FLOODGATES—LIABILITY FOR UNEXPECTED EMERGENCIES.—
    Where a contract for construction of floodgates provided that the
    contractor should provide against unusual conditions in order
    to protect the public from loss or damage, *held* that the expense
    of removing water and mud in the basin flooded by order of the
    engineer to protect the levee and work of construction from an
    unexpected rise of water was imposed on the contractor, and not
    on the district.

6.  LEVEES—FLOODGATES—RIGHT TO USE OF EQUIPMENT.—A contract
    giving floodgate contractors use of the district's equipment for
    the life of the job entitled them to use for the whole time of the
    construction, including periods of extension granted, without pay-
    ment of additional rent, unless the delays were caused by their
    fault and were not waived by extension agreements.

7.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—
    A finding of the chancellor on conflicting testimony will not be
    disturbed on appeal where not against the preponderance of the
    evidence.

Appeal from Jefferson Chancery Court; *Harvey R.
Lucas,* Chancellor; modified and affirmed.

*Rose, Hemingway, Cantrell & Loughborough* and
*Allen Hughes,* for appellant.

*Buzbee, Pugh & Harrison* and *Coleman & Gantt,* for
appellee.

McCULLOCH, C. J.    Appellant district was created
as a local improvement district for the purpose of con-
structing through Jefferson and Arkansas counties a
levee along the bank of the Arkansas River, and also to
construct necessary ditches, spillways and floodgates. It
was deemed necessary to construct two floodgates, one
across the mouth of the stream known as Little Bayou
Meto. The levee had been built across the mouth of the
bayou, and it was considered necessary to put in the flood-
gate so that the water would be prevented from flowing
into the bayou from the Arkansas River in times of over-
flow and to permit the water to flow out of the bayou in
times of normal stages of water in the river. The work
was to be done by cutting a gap through the levee fifty
feet wide and constructing concrete walls, wings and
flooring and two heavy steel gates reaching to the height

of the levee and the two walls on each side, thus closing the aperture when necessary.

Appellees entered into a written contract with the district to furnish the material and construct the floodgates for the schedule of prices on the unit basis. The contract was executed on April 22, 1921, and provided that the work should be completed within six months from that date. There was long delay in completing the work, and it was not formally accepted by the engineers as complete until October 1, 1924.

The sum of $112,413.28 was paid to appellees by the district during the progress of the work, and there is a conceded balance due in the sum of $17,817.60 according to the schedule of prices in the contract. There are, however, numerous other items claimed by appellees, but disputed by the district, and the latter also brings forward a claim against appellees for liquidated damages on account of delay in completion of the work according to the terms of the contract. Appellant also claims other items as credits on the balance due appellees for work under the contract. The total amount of balance claimed by appellees is about $32,000, and this action was commenced against appellant to recover that amount. Appellant filed a cross-complaint asking for recovery of liquidated damages in the sum of $25,342.79 and other credits claimed, running the amount up to $33,834.27, and, after conceding liability to appellees in the sum of $18,865.60, prayed for judgment over against appellees for the difference between the two claims, $14,968.67. The cause was tried in the chancery court of Jefferson County, without objection, and, after hearing the evidence, the court rendered a decree in favor of appellees against appellant for the recovery of $25,698.21, made up of the following items (less a credit of $17.23, unpaid on rental):

| | | |
|---|---|---|
| (1) | Amount of final estimate | $17,817.60 |
| (2) | Item 15:  Preparing sub-base, north end | 227.52 |
| (3) | Item 18:  Preparing sub-base, L. L. section | 6.43 |
| (4) | Item 20:  Removing old concrete S. W. corner | 76.41 |
| (5) | Item 24:  High water Feb., 1923 | 76.41 |
| (6) | Item 25:  Creosoted seal timbers | 512.29 |
| (7) | Item 26:  High water, May and June, 1923 | 662.96 |
| (8) | Shortage and gravel | 5,286.75 |
| (9) | Riprap stone | 948.00 |
| (10) | Rent of concrete mixer | 100.00 |

$25,715.44

The most important part of the controversy relates to appellant's claim against appellees for recovery of liquidated damages on account of the delay in completion of the work. The contract between the parties contained a clause providing for liquidated damages, which reads as follows:

"In case of default in completing the whole work to be done under this contract within the time specified, including such extensions as may have been granted, the contractor hereby agrees to pay to the party of the first part as liquidated damages for such default: First, a sum sufficient to compensate said first party for the cost and expense of employing engineers, inspectors and employees to the extent that their services are reasonably required during the period of default by the work of this contract; and, second, a sum equal to one per cent. on all moneys that have been paid the contractor under this contract for each calendar month or part thereof that the completion of the whole work under this contract is delayed. The party of the first part shall have the right to deduct such liquidated damages from any moneys due or to become due the contractor, and the amount, if any, still owing after such deduction shall be

paid on demand by the contractor or his surety. Payment of such liquidated damages shall not relieve the contractor or his sureties from any other obligations under this contract.''

According to the contract, appellees were to begin work on June 15, 1921, and the testimony shows that they began work a few days before that time. The work was to be completed, as we have already seen, on December 15, 1921, but it was not so completed, and in February, 1922, the commissioners of the district, by resolution duly passed, granted an extension to appellees to complete the work on or before November 15, 1922; and on March 15, 1924, the work not having been accepted, another extension to September 21, 1924, was granted by the commissioners, and, as before stated, there was a formal acceptance on October 1, 1924.

Testimony adduced by appellees tends to show that the gates were completed and swung in October, 1923, and were complete, except the painting and a slight defect about their working smoothly when being raised or lowered, and were used by the district from that time on, though there was no formal acceptance until October, 1924. There was a short delay in the early part of the work on account of high water, and there was a delay also during the summer and fall of 1921 on account of the inability of the district to make payments for the work as it was done. The district sold bonds in the sum of $1,100,000, the money to be advanced by the bond purchaser in installments, and there was a default in these advancements, which caused considerable delay in the work. Appellees also introduced testimony to the effect that there were numerous other delays resulting from causes beyond their control, and, in most instances, the delays were caused by the officers and agents of the district itself. In other words, there was testimony adduced by appellees tending to excuse themselves from fault with respect to the delay in completion of the work, but there is a conflict in the testimony, and, under the view we take of the case, it becomes unnecessary to settle

this conflict. The clauses of the contract which are material to the decision of this point in the case are as follows:

"3. Time and Order of Completion.—The contractor agrees that the work shall be commenced and carried on at such points and in such order or precedence and at such times and seasons as may be directed by the engineers, in accordance with § 10 of the specifications. The engineers shall have the right to have the work discontinued for such time as may be necessary, in whole or in part, should the condition of the weather or of flood or other contingency make it desirable so to do, in order that the work shall be well and properly executed. Extension of time may be granted the contractor for discontinuance of work so required, as provided in § 4 of the specifications entitled 'Extension of Time.' *   *   * The board shall have the right, at its discretion, to extend the time for the completion of the work beyond the time stated in this contract, for reasons set forth in § 4, entitled, 'Extension of Time,' but such extension, if granted, shall waive no other obligation of the contractor or of the sureties, and, if the time for the completion of the work be extended by the board, then in such case the district shall be fully authorized and empowered to make such deductions from the final estimate of the amount due the contractor as are stipulated in the agreement for each calendar day that the contractor shall be in default for the completion of the work beyond the date to which the time of completion shall have been extended by the board. The contractor may be permitted or required to continue and finish the work or any part thereof after the time fixed by the contract for completion, or as it may have been extended, but such action shall in no wise operate as a waiver on the part of the district of its right to collect the liquidated damages agreed upon in case of such delay or of its rights under this contract.

"4. Extension of Time.—Delays due to cause beyond the control of the contractor, other than such as reasonably would be expected to occur in connection with or during the performance of the work, may entitle the

contractor to an extension of time for completing the work sufficient to compensate for such delay. No extension of time shall be granted, however, unless the contractor shall immediately, but in any case within 15 days from the initiation of the delay, notify the engineers in writing of such delay, and of the time of beginning and the cause of same, and unless he shall, within 15 days after the expiration of such delay, notify the engineers in writing of the extension of time claimed on account thereof, then only to the extent, if any, allowed by the engineers. To allow or to require completion after the time specified will not constitute an extension of time. No extension of time shall operate to release the surety from any of its obligations. The contractor declares that he has familiarized himself with weather, river and local conditions and other circumstances which may or likely to affect the performance and completion of the work, and that he has carefully examined the data and information pertinent thereto collected by the engineers and on file in their office, and agrees that, taking these conditions and circumstances into account, he will provide adequate equipment to prosecute the work in such manner and with such diligence that the same will be completed within the time specified herein, or as the same may be extended, even though the most adverse conditions which reasonably could be expected to occur during the period of construction do prevail during the performance of the work.''

It will be noticed that § 3 of the contract, quoted above, provides that an extension granted by the board beyond the date of completion "shall waive no other obligation of the contractor or of the sureties." It is the contention of learned counsel for appellant that this provision eliminates all question of waiver of the clause in the contract with respect to liquidated damages on account of delay. Conceding that this contention is correct, so far as it prevents waiver of claims for liquidated damages on account of delay occurring after the end of the extension period, it does not prevent the extension

from operating as a waiver of claim for liquidated damages on account of prior delays. A further provision in the same section prescribing a method of computing damages for delay after the end of the extension shows very clearly that it was intended, in case of an extension of time, only to liquidate the damages which occurred after the end of the extension. It provides that, "if the time for the completion of the work be extended by the board, then in such case the district shall be fully authorized and empowered to make such deductions from the final estimate of the amount due the contractor as are stipulated in the agreement for each calendar day that the contractor shall be in default for the completion of the work beyond the date to which the time of completion shall have been extended by the board." There is still a further provision that mere permission to the contractor or a requirement to continue and finish the work after the time fixed for completion shall not operate as a waiver on the part of the district of its right to collect liquidated damages. But there is a difference in this respect between mere permission to complete the work or a requirement to complete it, and an agreement to extend the time for completion. The extension constituted a new contract concerning the time for completion, and all of the requirements of the original contract which related to that point and the liabilities resulting from a delay become merged into the new contract. The case in this respect comes clearly within former decisions of this court. *Ozark & Cherokee Central Ry. Co.* v. *Ferguson,* 92 Ark. 254, 122 S. W. 624; *Murray* v. *Miller,* 112 Ark. 227, 166 S. W. 536; *Morris* v. *Southwestern Supply Co.,* 136 Ark. 507, 206 S. W. 894; *Hunt* v. *Woods,* 168 Ark. 407, 270 S. W. 505. If appellant desired to hold appellees liable under the contract for liquidated damages on account of prior delays, it should have been so stated in the contract of extension, and the agreement for the work to be completed within the additional specified time released appellees, by necessary implication, from any liability on account of failure to complete the work before

that time.  The resolution of the board granting the
extension from March 21, 1924, contained a recital that
"the board does not waive any claim of one per cent. liqui-
dated damages due up to this date," but this did not con-
stitute a contract to pay damages.  The original contract
provided that charge for damages should be made for
such as accrued only after the expiration of periods of
extensions, and this provision could not be abrogated
except by express contract to that effect.  The resolu-
tion granting the extensions did not constitute a new con-
tract for the payment of damages.  It was merely a stipu-
lation against waiver of whatever claim the board might
have under the original contract, and there could be no
such claim, for, as already shown, the contract itself cov-
ered damages only after the expiration of the extensions.
For the same reason appellees were released by the new
agreement in regard to time of completion from common-
law liability for actual damages sustained on account
of prior delay.  As we have already seen, the last exten-
sion ran up to September 21, 1924, which was nine days
before the work was formally accepted by the engineers
as complete.  There is no contention that there was any
actual damage during that period of time, and it is prac-
tically undisputed that the work was actually completed
before the expiration of the last extension, hence the
claim for either liquidated or actual damages cannot be
sustained, and the chancery court was correct in so
deciding.

Appellant concedes liability for the balance of esti-
mate and the item of $948 for the price of riprap stone.
and the sum of $100 rent on concrete mixer, and it does
not challenge the correctness of any items contained in
the court's finding in favor of appellees except the two
items of price of work in removing water and mud after
the high waters in February and June, 1923, and also
the item of $5,286.75 shortage in gravel.  The two items
concerning the expense on account of high water aggre-
gate the sum of $1,175.25.  There was an unexpected rise
of water in the Arkansas River, and at those times the

concrete walls on each side of the aperture through the levee had not been constructed.  There had been partial excavation of the levee, which weakened it, and there was a hole or basin where the concrete floor was to be laid.  In order to protect the levee from outside pressure of water, the engineers ordered the contractors to fill the hole or basin behind the levee full of water in order to provide counter-protection against such pressure. When the overflow from the river subsided it was necessary to pump the water out of the basin, and the mud that was left hindered the work of laying the concrete, and it required extra labor to obviate this trouble.  The work, according to the testimony adduced by appellees, cost the sums of money claimed by them, and the chancery court allowed the claim.  The contract contains the following provisions:

"11.  To Provide for Emergencies.—It is understood by all parties to this contract that unusual conditions may arise on the work which will require that immediate and unusual provisions be made to protect the public from danger of loss or damage due directly or indirectly to the prosecution of the work, and that it is part of the service required of the contractor to make such provisions.  *  *  *"

"37.  Hindrances and Delays.—The risk and uncertainties in connection with the work are assumed by the contractor as a part of this contract, and are compensated for in the contract price for the work.  The contractor, except as otherwise definitely specified in this contract, shall bear all loss or damage for hindrances or delays from any cause during the progress of any portion of the work embraced in this contract, and also all loss or damage arising out of the nature of the work to be done, or from the action of the elements, inclement weather and floods, or from any unforeseen and unexpected conditions or circumstances encountered in connection with the work, or from any other causes whatever; and, except as otherwise definitely specified in this contract, no charge other than that included in the con-

tract price for the work shall be made by the contractor against the district for such loss or damage. * * *''

Now, it appears from the testimony that the flooding of the basis behind the levee was necessary in order to protect the levee as well as the work then in progress of constructing the floodgates. It is true that appellees were not responsible for the condition that then existed and that it was an unexpected emergency, so that it relieved appellees of any responsibility for delay caused by the high water, yet the expense of restoration was one which, under the contract, was imposed upon appellees, and we think that they are not entitled to recover for the expense.

There is a conflict in the testimony as to the other item for shortage in gravel. The district had let the contract for this work to another concern, Trainer & Williams by name, who abandoned the work, and, when the contract was let to appellees, the district sold to appellees a quantity of gravel, estimated to be 2,200 yards, but, according to the testimony adduced by appellees, it turned out that there were only 1,087 yards. The estimates made by the respective parties were made under different circumstances, but we think that the state of the proof is such that we are not justified in overturning the finding of the chancellor on that item.

Appellant claims credit for two additional items which the court refused to allow—one in the sum of $6,827 for additional rent on equipment and an item of $1,647.25 for repairs on equipment. It is undisputed that the equipment owned by the district was rented to the contractors for use in constructing the improvement, and there is a conflict in the testimony as to the terms of the agreement. At the time the equipment was rented to appellees the period of time for the completion of the work fixed in the contract had not expired, and the agreed rent was to be $3,413.50, but appellant claims additional rent on account of the delay in construction of the work and consequent use of the equipment. The solution of this part of the controversy turns upon the question as to what period of time was to be covered by

the agreed amount of rent. The testimony adduced by appellees shows that they were to have the equipment for "the life of the job," and their contention is that this meant the whole time of the progress of the work, including the extension, regardless of any delays. Our conclusion is that appellees are correct in their interpretation of the contract. It meant that they were to have the use of the equipment for the stipulated rent, regardless of delays, unless the delays were caused by the fault of appellees and were not waived by extension agreements. The court was correct in rejecting that item, and also in rejecting the item for repairs on equipment, for there was a conflict in the testimony as to whether or not the equipment was returned in good shape, and we cannot say that the finding of the chancellor is against the preponderance of the evidence.

Appellees have cross-appealed and claim additional items which were not allowed by the trial court, but, after consideration, we are of the opinion that the findings of the court were as liberal to appellees as the · evidence justified.

The decree is modified by allowing the additional credit of $1,175.25 stated above, thus reducing the amount of recovery by appellees to the sum of $24,522.96, and judgment will be entered here for the balance thus found. It is so ordered.