HICKS v. NORSWORTHY.

Opinion delivered March 26, 1928.

1. CURTESY—BIRTH OF CHILD.—The claim of curtesy by a surviving husband in his wife's land is established by proof of the birth of a child which lived a short time.

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—The findings of the chancery court will not be disturbed unless found to be against the preponderance of the testimony, and this applies to inferences as well as to direct proof.

3. JUDGMENT—CONCLUSIVENESS.—A suit in which a surviving husband claims an estate of curtesy in his deceased wife's land is not a collateral attack on a decree rendered in a prior suit brought by the husband for the purpose of canceling the deed by which the property was conveyed to his wife on the ground that it was made to the wife instead of to the husband through mistake.

4. JUDGMENT—COLLATERAL ATTACK.—The judgment of a court of general jurisdiction is presumed to be valid as against collateral attack.

5. CURTESY—LIABILITY, FOR TAXES.—The owner of an estate of curtesy, rather than the remainderman, held required to pay the ordinary taxes and the amount required to redeem from a tax sale.

6. CURTESY—LIABILITY FOR PERMANENT IMPROVEMENTS.—Assessments for permanent improvements must be ratably apportioned between the tenant by the curtesy and the remainderman, and a decree requiring the former to pay the entire assessment in an improvement district was erroneous.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed in part.

*Mahony, Yocum & Saye,* for appellant.

*Wilson & Martin* and *Compere & Compere,* for appellee.

MEHAFFY, J. The appellee, in April, 1921, filed suit in the Union Chancery Court against John Bradley, and alleged that he, Charles Norsworthy, was the owner in fee of a block of land in section 33, township 17 south, range 15 west, and gave a particular description of said land. That he purchased the land from B. R. and C. O. Braswell on November 11, 1898, and paid for it $12.50, and the improvements on it had cost him more than $1,000, and that he and his wife lived on the same, and he paid taxes for more than 20 years consecutively. That it was his homestead. That his wife, Mandy Norsworthy, died in May, 1918, and left surviving her one son, John Bradley, the defendant in this suit. That Bradley sought to obtain the legal title without having any legal or equitable rights to it. He alleged that, when he purchased the land, the deed was by mistake made to his wife, Mandy Norsworthy. He asked that the deed be canceled, title to said land vested in him, and the title quieted against the said John Bradley.

Bradley filed a disclaimer, alleging that he had conveyed the land to J. W. Hicks. Hicks filed an intervention, denying the allegations of the complaint, alleging that he was an innocent purchaser, and that the record title was in Mandy Norsworthy, the mother of John Bradley, from whom he purchased.

The decree was in favor of the defendant or intervener, and Norsworthy appealed to the Supreme Court. This court, in the case of *Norsworthy* v. *Hicks,* 170 Ark. 877, 281 S. W. 660, affirmed the decree of the chancery

court, and held that the testimony was not sufficient to establish a mistake in the execution of the deed to Mandy instead of Norsworthy; at least, that it was not clear and satisfactory, and, for that reason, affirmed the decree of the chancery court.

In the meantime, and before the decision of the case in this court, J. W. Hicks filed a suit in the Union Circuit Court on May 14, 1921, against Charles Norsworthy and H. O. Lawn, alleging that he was the owner and entitled to the possession of the above described land; that he purchased it from John Bradley, and attached a copy of the deed. He alleged that John Bradley was the son and only heir of Mandy Norsworthy, deceased; that she was, at the time of her death, the owner and in possession of said land; that she was the wife of Charles Norsworthy, and that Charles Norsworthy and Mandy Norsworthy never had any issue born alive by said marriage. Judgment was prayed for possession, and for costs, and for damages for the rental value of the land.

In September, 1924, this case was transferred to the chancery court of Union County, and in October, 1926, this case was dismissed without prejudice.

The decision in the Supreme Court of the case of *Norsworthy* v. *Hicks* was April 5, 1926, and it was in October after that that the case was dismissed without prejudice. The present suit was brought by Norsworthy November 4, 1926, alleging that he was the owner of an estate of curtesy in the lands described, and alleging that he and Mandy Norsworthy, his wife, had children born alive to them as the issue of said marriage; asked the court to make an order restraining Hicks and the sheriff of Union County from interfering with or disturbing Norsworthy's possession, and asked that the court declare that Norsworthy had an estate by curtesy in and to said land.

There was an answer filed, denying the material allegations. Testimony was taken and a decree entered in favor of Charles Norsworthy, after there were amended complaints and amended answers filed.

The first contention of appellant is that the decree is not supported by the evidence, and states that the testimony as to their having children born was too absurd to appeal to intelligent minds or be worthy of any credence whatsoever.

There was very little testimony tending to show that any children were born alive, but Claricy Maryweathers testified that she knew Charles and Mandy Norsworthy; that three children were born to them—two little boys; that two were born dead; that the first one had no life in it at all, and the second had life in it, but did not live, and was not a developed child; that the third one was a girl, and that it lived about three-quarters of an hour. That Charles Norsworthy was a brakeman on the railroad, and was absent from home at the time each of said children was born.

Delia Morgan testified that she was at the home of Charles and Mandy Norsworthy just after two children were born. That one was a boy and the other a girl. That they were breathing, and she heard the little girl whine. That the little girl lived 15 or 20 minutes.

Charles Norsworthy testified that he and Mandy Norsworthy were married in 1895, and lived together until she died; that he was a brakeman on the Iron Mountain Railroad, and was on the road pretty nearly all the time; that he stayed at Gurdon, which was the headquarters, and ran between Gurdon and El Dorado; that sometimes he would be turned around when he got to El Dorado and would not even get to go home; that Mandy lived in El Dorado; that he was never at home at any time when any children were born to him and Mandy; that Mandy had been married before to one Ed Bradley, and had a boy named John.

John Bradley testified that he was the son of Mandy Norsworthy; lived with her until her death, and never knew of any children being born after her marriage to Charles Norsworthy.

Claricy Maryweathers was recalled, and testified that John Bradley was about three or four years old when

Charles Norsworthy and Mandy Norsworthy were married; that he was away from home with his aunt when one of Mandy Norsworthy's children was born.

While the testimony as to children being born to Charles Norsworthy and Mandy Norsworthy is not very strong, yet it is undisputed, and there is no effort made to impeach the witnesses testifying to the facts. And the rule is well settled that the findings of a chancery court will not be disturbed unless we can say that the findings are against the preponderance of the testimony.

This court said in a recent case: "The well settled rule here is that the findings of the chancery court will not be disturbed unless found to be against the preponderance of the testimony, and this applies to inferences as well as to direct proof." *Rainwater* v. *Merchants' National Bank,* 172 Ark. 284, 288 S. W. 388. See also *Farrelly Lake Levee Dist.* v. *McGeorge,* 172 Ark. 460, 289 S. W. 753; *Alexander* v. *Stack,* 172 Ark. 530, 289 S. W. 484; *Pettigrew* v. *Pettigrew,* 172 Ark. 647, 291 S. W. 90.

We cannot say that the finding of the chancellor was against the preponderance of the evidence.

It is next contended by the appellant that this suit is a collateral attack upon the decree rendered by the Union Chancery Court on November 6, 1924, and it is also contended that the decree of November 26 is *res judicata* and a complete bar to appellee's cause of action in this case. We do not agree with appellant that this is a collateral attack upon the decree rendered by the Union Chancery Court on November 6, 1924. That decree was rendered in a case brought for the purpose of canceling a deed which it was alleged was made to Mandy Norsworthy instead of Charles Norsworthy, through mistake. The only issue in the case was whether the deed made to Mandy Norsworthy when the land was purchased by Charles Norsworthy was made to her through mistake and should be canceled. The question of curtesy was not mentioned by either party. If the contention of appellant was correct, he would have had no estate by curtesy. He could not be the owner of the fee and also

have title or right of possession by curtesy. In other words, if the deed had been made to her by mistake and had been canceled, then Norsworthy would have been the owner of the land, and that would be entirely inconsistent with any claim of a right by curtesy. It would not only have been inconsistent, but both parties regarded the suit as involving nothing but the question of the title to the land. The evidence shows that the appellant, on May 14, 1921, while the chancery case was pending, brought a suit in the Union Circuit Court, putting in issue the question involved in this suit—that is, the question of appellee's right of curtesy. The question was whether Charles and Mandy Norsworthy had children born alive. That suit was transferred to the chancery court on September 22, 1924, and remained there without anything being done until Ocotber, 1926.

The decree in the chancery court, which appellant claims to be a bar to this suit, was decided by this court on April 5, 1926, and thereafter, in October following, appellant dismissed the suit without prejudice, the suit that involved the question of Norsworthy's right by curtesy. Of course a judgment of a court of general jurisdiction is presumed valid on collateral attack, but, as we have said, this is not a collateral attack on the judgment.

It is earnestly contended by appellant that it was Norsworthy's duty to interpose in that suit every defense that he had to the intervention, both legal and equitable, and he calls attention to numerous authorities.

We have already stated that a claim of absolute title in himself was inconsistent with the claim that the absolute title was in his wife and that, because of that, he was entitled to curtesy in the property. He could not be the absolute owner, as he claimed in the original suit filed by him, and have any right by curtesy at all.

Appellant calls attention to the case of *Wilson* v. *Pannell,* 157 Ark. 22, 247 S. W. 64, as authority in the contention that it was the duty of Norsworthy to interpose every defense that he had, both legal and equitable. The court, however, in that case said: "A comparison of the

statement of facts made by the court in the suit brought
in equity by Wilson against Mrs. Pannell to quiet his title
to the lot with the statement of facts in the present case
will show that they are in all essential respects the same.''

In the instant case the facts are not the same as the
facts in the former case. In the first case, Norsworthy
claimed to be the owner in fee, and claimed that the deed
made to his wife was through mistake, and the suit was
for the purpose of canceling that deed. And the ques-
tion of curtesy was in no way involved, was not raised
by the pleadings, and, as we have already said, would
have been inconsistent with the position that Norsworthy
took that he was the owner in fee.

In the above case of *Wilson* v. *Pannell,* the court also
said:

''Therefore, in a suit between the same parties for
the same property, under a state of facts essentially the
same, the court having held that the equitable title was
in Mrs. Pannell, her plea of *res judicata* is fully estab-
lished. Under our Civil Code a defendant may set forth
in his answer as many grounds of defense, whether legal
or equitable, as he shall have. * * * Under this provision
of the Code it is well settled that the defendant in an
action at law must interpose all defenses, legal and
equitable.'' *Wilson* v. *Pannell,* 157 Ark. 22, 247 S. W. 64.

That is true, and if the plea of *res judicata* was made
against the person who was defendant in the former suit,
he would have had to interpose all the defenses he had
in the former suit. But certainly plaintiff was under no
obligation to bring a suit alleging that he was entitled by
curtesy because his wife owned the property, when his
suit was based on the claim that he himself was the
owner of the property.

Appellant also calls attention to the case of *Baker* v.
*Hudson,* 117 Ark. 492, 176 S. W. 337. The court said in
that case, quoting from the case in 96 Ark. (*Fourche, etc.,*
v. *Walker*) 540, 132 S. W. 451, which appellant also refers
to:

"It is true that a judgment is conclusive, not only upon the question actually determined, but upon all matters which might have been decided in that suit, but this refers to all matters properly belonging to the subject of the controversy and within the scope of the issues. In other words, the defendant must set forth in his answer all grounds of defense that he may have, or he will be held to have waived such defenses as he failed to set out."

Certainly it cannot be contended that the facts or issue as to curtesy properly belonged in a suit where the plaintiff was claiming absolute title in himself. And the question involved in the instant suit was not within the scope of the issues in the former suit.

This court has said:

"These rulings are conclusive of this case, but the contention made by appellee, that appellant was precluded from claiming the homestead in this action on the ground that it was necessarily included within the issues made on the bill to set aside the conveyance for fraud, and therefore *res judicata;* and the contrary contention of appellant, that he was not precluded by that adjudication, but had a right to claim his homestead exemptions until ousted by writ of possession, together with the suggestion that there is a conflict in this particular between the case of *Baker* v. *Hudson,* 117 Ark. 492, 176 S. W. 337, and *Bunch* v. *Keith,* 64 Ark. 654, 44 S. W. 452, moves us to announce that we adhere to the doctrine in *Bunch* v. *Keith, supra,* as a rule of property. It does not follow that the case of *Baker* v. *Hudson, supra,* is overruled. In the latter case the widow and children, in whose names the cause was revived, had been ousted from possession of the property claimed as a homestead by legal proceedings, and, after remaining out of possession for several years, brought suit for the possession thereof. The case of *Baker* v. *Hudson, supra,* was decided right, but it should have been put on the ground that the homestead claimant had been ousted from the homestead by legal proceedings before instituting suit to recover same, and not upon the ground that the homestead right was neces-

sarily involved within the issue presented by the pleadings and evidence in the original suit. * * * A decree of foreclosure in a suit wherein the widow of the mortgagor was made a party will not bar her from afterward claiming dower, unless her right of dower was actually put in issue. * * * If this be true as to the dower right, we can see no good reason why the same rule should not apply to the homestead right." *Gray* v. *Bank of Hartford,* 137 Ark. 232, 208 S. W. 302.

Appellant calls attention to a number of other cases on the question of *res judicata*, and the rule as announced by this court is that a defendant must interpose all the defenses that he may have, but we know of no rule that requires the plaintiff, when he brings a suit claiming absolute title, to undertake to litigate at the same time his right by curtesy, which is inconsistent with the right he might have as absolute owner. It would not be a bar unless the right by curtesy was actually involved in the suit, and in this case it was not, and neither party seemed to believe that it was, because the appellant himself brought a suit while this original suit was pending, raising the question of right by curtesy.

The appellee filed a cross-appeal from the decree of the court requiring him to deposit a sum of money equal to all of the taxes and interest which had been paid by Dr. Hicks. This amount was $219.14. Appellee has prosecuted a cross-appeal, and contends that he should not be required to pay the full amount of assessments in improvement districts. He concedes that he must pay the ordinary taxes. The order for the deposit of the money for the ordinary taxes or redemption from tax sale is correct, but the court should not have required a deposit of the amount paid as assessments in improvement districts. This court has decided the question, but the rule is well stated in R. C. L. as follows:

"Where public improvements are made by the municipality, the liability for the assessment therefor, as between life tenant and remainderman, is usually held to depend upon the character of the improvement, whether

permanent or temporary, and, according to the great weight of authority, a special municipal assessment for the cost of a permanent improvement must, with respect to property subject to a life estate, be ratably and equitably apportioned between the life tenant and the remainderman. There are, however, a few decisions which apparently hold that the entire cost of permanent improvements falls on the remainderman. One method adopted is to apportion the costs in the proportion which the value of the life estate bears to the value of the whole estate; and in some cases. the burden has been apportioned by requiring the tenant for life to contribute to the extent of interest during his life, the remainderman to pay the principal. Where, however, the improvement is of a temporary character, requiring repeated renewals during a lifetime, the entire cost thereof falls on the life tenant. Permanent public improvements include the opening, widening or paving of streets, the construction of a sewer or drainage ditch, and, in some jurisdictions, the paving of a sidewalk; but in other States such paving is regarded as an improvement of a temporary character. Obviously, the question whether the life tenant or the remainderman must ultimately bear the cost of a public improvement may be determined by the provisions of the instrument by which the life estate is created." 17 R. C. L. 638.

We hold that the assessments for permanent improvements must be ratably and equitably apportioned between the life tenant and the remainderman. But the evidence in this case is not sufficient to determine what part, if any, of the assessments should be paid by the remainderman. It appears that there were taxes paid for paving districts and sewer districts.

In addition to the rule as stated in R. C. L., this court has decided that the life tenant must pay all the ordinary taxes, and this court said:

"The only questions presented are whether or not the court was correct in rendering a decree in favor of appellees for the recovery of taxes paid and for a pro-

portionate part of the proceeds of the sale of timber and in perpetuating the injunction against appellant concerning the cutting of timber. The proof shows that appellant failed to pay taxes on the land for certain years, as was his duty to do because he was the life tenant and in possession, enjoying the rents and profits.'' *Ussery* v. *Sweet,* 137 Ark. 140, 208 S. W. 600.

It has been many times held that improvement taxes or assessments for public improvements are not ordinary taxes, and that taxes of this kind must be paid ratably by the life tenant and remainderman, when the improvements are permanent. See 21 C. J. 957.

It appears that there was $130.87 improvement taxes for sewer district tax and paving improvement district tax. In order to determine whether the remainderman should pay any portion of this amount, and, if so, what portion, it will be necessary to take the testimony and for the court to find whether the improvements are permanent, and, if so, what proportion of said taxes should be paid by each, the life tenant and the remainderman.

The case on direct appeal is affirmed, and the decree of the court as to the $130.87 improvement taxes is reversed, and remanded with directions to ascertain whether, under the rules above announced, the remainderman should pay any portion of this, and, if so, what portion. It is so ordered.

SMITH and McHANEY, JJ., dissent.