The HASKINS LAW FIRM *v.* AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, et al.

90-239                                      804 S.W.2d 714

Supreme Court of Arkansas
Opinion delivered March 4, 1991.

*Wayne Juneau*, for appellant.

*Wright, Lindsey & Jennings*, by: *Roger A. Glasgow* and *Kathryn Pryor Gearhart*, for appellee.

STEELE HAYS, Justice. This dispute arises under the Attorney's Lien Law, Ark. Code Ann. § 16-22-301-304 (Supp. 1989).

On September 14, 1984, Ms. Fritzi Ketcher-Montgomery was injured in a collision with James L. Redditt, an insured of American National Property and Casualty Insurance Co., (ANPAC). Ms. Ketcher-Montgomery hired The Haskins Law Firm (Haskins) and agreed to a contingent fee of 33 $^1/_3$ percent of all sums recovered. Approximately a year later, on November 20, 1985, she terminated her agreement with Haskins and hired Guy Jones, Jr. On December 2, 1985, Haskins sent certified letters to ANPAC advising that Haskins no longer represented Mrs. Ketcher-Montgomery, but also claiming an attorney's lien on behalf of Haskins against any settlement. On December 16, 1985, Guy Jones wrote to ANPAC that he was "trying to work out" an agreement with Haskins and in February Jones wrote to Haskins offering to "assure and guarantee for an attorneys lien on your part $4,000, to cover the time and expense your firm or office has been out." Jones continued, "After talking with Ms. Ketcher about a division of the fee, she was very adamant about your firm having nothing whatsoever to do further with her claim and has authorized me to assure the lien amount." Haskins responded: "Your offer to assure and guarantee our attorney's lien on our part in the amount of $4,000, is accepted."

In October of 1987, the claim was settled for $50,000, ANPAC's policy limits. No notice of the settlement was given to Haskins by any of the parties to the settlement. Some two years later, after learning of the settlement, Haskins wrote to Jones and Ketcher-Montgomery demanding payment of the $4,000. When

payment was not forthcoming, Haskins filed suit in chancery court against ANPAC, Jones, and Ketcher-Montgomery, seeking judgment against all parties in the amount of $16,666.66, representing one-third of the settlement figure. ANPAC generally denied the allegations and sought a judgment over against Ketcher-Montgomery and Jones.

Haskins moved for summary judgment against ANPAC, resulting in an order denying Haskins any recovery against ANPAC, but awarding Haskins a judgment against Jones for $4,000, plus costs and an attorney's fee. Haskins appeals asking that the order be reversed and for judgment against ANPAC for $16,666.666.

Haskins first argues this case is governed by *Lockley* v. *Easley*, 302 Ark. 13, 786 S.W.2d 573 (1990). But there are material differences between the two cases. In *Lockley* there was no substitution of counsel and no agreement to accept a different fee. Mrs. Carter (formerly Mrs. Lockley) hired Michael Easley to recover moneys due under a decree of divorce from a former husband. The fee agreement was for a contingent fee of one-third of any recovery. Easley filed a petition to show cause and $6,000 was offered in settlement. At that point Mrs. Carter indicated to Easley her intention to drop the matter and she directed him to dismiss the pending petition. Easley did as she instructed and then billed Mrs. Carter for time and expenses, $297.50. Easley later learned that not long after the dismissal, Mrs. Carter had received a payment of $6,000 and had signed an agreement with her former husband in the office of his attorney releasing all claims against him. Easley sought and recovered a judgment of $2,000 (less $297.50) against Mr. Lockley and Mrs. Carter pursuant to the attorney's lien statutes. Mrs. Carter argued on appeal that Easley had waived any claim to the contingent fee by billing and collecting for his services on an hourly basis. We found that argument unconvincing:

> But the chancellor found that Easley had submitted the statement for $297.50 in good faith and before he discovered the facts concerning the payment and settlement, and concluded that his rights under the contractual agreement with Mrs. Carter could not be thereby defeated. We believe that was correct and appellants have not cited

authority requiring a different result.

█    Haskins argues that its agreement with Jones is analogous to the agreement between Easley and Mrs. Carter. But Easley had no knowledge of the recovery Mrs. Carter had received at the time he billed her for his service, nor was there any discussion between them of an attorney's lien. In the absence of the attorney's awareness of this material fact at the time of settling his client's account, he did not waive any claim to a contingent part of a recovery made without his knowledge. *See Schaefer* v. *Arkansas Medical Society*, 853 F.2d 1487 (8th Cir. 1988).

A compromise agreement is conclusive only as to those matters which the parties have fairly intended to include within its terms and the necessary consequences thereof. *Meyers*, v. *Meyers*, 210 Ark. 714, 197 S.W.2d 477 (1946). No reasonable inference could be drawn from the circumstances in the *Lockley* case that attorney Easley intended to accept $297 in payment of services that had resulted in a recovery of $6,000 by his client. *See also* 6 A. Corbin, *Corbin on Contracts* § 1296 (1962). "Inconsistent Contracts" (The settlement operates as a discharge by substitution only so far as the inconsistency extends). In contrast, Haskins expressly agreed to accept $4,000 in settlement of its fees, irrespective of the amount of any recovery ultimately realized.

█    Here we are not dealing merely with a billing for Haskins' services performed on an hourly basis, as in *Lockley*, but with an express contracting away of Haskins' contingent fee for a specific amount. When Haskins agreed to accept $4,000 from Jones, it bargained away its rights to any future recovery that might occur. For by the language of the attorney's lien statute, the lien applies to "any settlement." § 16-22-304. We conclude that the intention of the parties was that Haskins substituted a liquidated sum in exchange for surrendering its right to a percentage of any subsequent recovery.

Haskins next argues that if the agreement with Jones/Ketcher-Montgomery *did* intend to waive any lien on future settlements or judgments, that agreement was breached by Jones's failure to pay and Haskins could then revert to its rights in its original agreement for one-third of any settlement or judg-

ment. We disagree.

■ Under general contract principles, upon the execution of a valid and legally substituted agreement the original agreement merges into it and is extinguished, and failure to perform the substituted agreement will not revive the old agreement. 17 Am. Jur. 2d *Contracts* § 459 (1964). *See also Id.* at § 483; Restatement (Second) of Contracts § 279 (1990); 6 A. Corbin, *Corbin on Contracts* § 1293 (1962); *Farelly Lake Levee Dist.* v. *McGeorge*, 172 Ark. 460, 289 S.W. 753 (1926); and *Ozark and Cherokee Central Ry. Co.* v. *Ferguson*, 92 Ark. 243, 122 S.W. 624 (1909).

The Restatement (Second) of Contracts § 279 (1990) provides:

(1) A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.

(2) The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty.

Further, Comment a. to the section reads: If the parties intend the new contract to replace all of the provisions of the earlier contract, the contract is a substituted contract. Was Haskins' second contract for $4,000 a substituted contract for its original contract? We believe it was. The question is, did Haskins and Jones intend for any rights under the original contract to be reserved or incorporated into the second contract? As noted above, we think it was fairly intended that Haskins release its rights to one-third of any settlement under the original contract, in exchange for a liquidated sum. It is evident the intent of the parties was to substitute the second contract for the first and to accept it in satisfaction of the obligor's existing duty. Nor has Haskins offered anything below or on appeal to suggest otherwise. Therefore, the terms of the original contract had been extinguished and were not available as an alternative basis for suit.

■ As its last argument Haskins contends that under the attorney's lien statutes [Ark. Code Ann. § 16-22-301 through 304 (Supp. 1989)], regardless of any agreement with Jones, it still has recourse against any other parties to the settlement. Specifically,

Haskins argues it has a lien for $16,666.66 against ANPAC under the terms of its original contract with Mrs. Ketcher-Montgomery. Haskins is correct in the contention that it can pursue all parties to the settlement. *See* § 16-22-303 (b)(1); *Lockley* v. *Easley, supra.* We have no difficulty concluding that Haskins has a cause of action against ANPAC under the statute, and we agree, were it not for the agreement with Jones/Ketcher-Montgomery, Haskins would be arguably entitled to its contingent fee under the above language against ANPAC. However, as discussed previously, Haskins can no longer rely on the terms of the original contract as those were extinguished when the substituted contract was entered into. Therefore Haskins is limited to the stipulated sum of the substituted contract for its remedy, which sum was also determined by the trial court to be a reasonable fee pursuant to Ark. Code Ann. § 16-22-303(b) (1987).

We find that under Ark. Code Ann. § 16-22-303 (Supp. 1989), ANPAC is one of the parties that could be sued for the attorney's fee of $4,000, and we modify the trial court's order to the effect that the judgment be entered against both Jones and ANPAC, with ANPAC entitled to a judgment over and against Jones and Mrs. Ketcher-Montgomery.

Affirmed as modified.