Kory *v.* Less.

Opinion delivered November 11, 1929.

*Robert C. Powell, W. E. Beloate* and *Horace Chamberlin,* for appellant.

*Smith & Blackford* and *G. M. Gibson,* for appellee.

Mehaffy, J. This suit was begun by appellees in the Lawrence Chancery Court on August 6, 1927, praying for reformation of a deed from Jake Less and others to Alec M. Less for the forfeiture of life estate of Ida Less Kory, and that appellees be declared the owner and

entitled to the immediate possession; that a lien be declared in favor of Gussie Less for $140 a month; to restrain Ida Less Kory and W. E. Beloate from permitting and committing further waste; and for judgment against Ida Less Kory and W. E. Beloate for damages, for taxes paid, together with interest, and for damages done to the farm and lands constituting the life estate, and also for damages to the homestead; and the complaint also prayed that Ida Less Kory and W. E. Beloate be restrained from further managing and controlling the property, pending the suit, and that a receiver be appointed for the purpose of taking charge of the property and repairing the buildings, fences, improvements, etc., and placing the same in cultivation; for an order fixing the amount due Gussie Less from Ida Less Kory, and for an order directing the sale of the life estate of Ida Less Kory for the satisfaction of the judgment.

The record consists of more than 1,200 pages, and it would make this opinion entirely too long to set out even the substance of all the pleadings and proof. The issues, however, may be stated briefly as follows:

In 1905 Isaac Less, who is now deceased, and appellee, Gussie Less, were divorced. They had been married a number of years, and were the parents of six children, all of whom are of age. The property rights of Isaac Less and Gussie Less were settled by agreement, prior to the granting of the divorce. By this settlement Gussie Less was to receive $140 pr month during the term of her natural life, or until she should remarry, and the payment of this sum was secured by a first lien on practically all the property owned by Isaac Less.

Some years after the divorce was granted, Isaac Less married a second time. In 1917 Isaac Less died intestate, leaving surviving him his widow Ida Less, who later married a man by the name of Kory, and who is now Ida Less Kory, the appellant. His first wife, Gussie Less, also survived him and all the children, who are the appellees here.

After the death of Isaac Less, Ida Less made a contract with W. E. Beloate, whereby she employed him as attorney in the management of her estate, the setting off of her dower and homestead. Beloate was also given an option to purchase the dower lands.

Ida Less filed her petition asking that dower and homestead be assigned to her, and this was done. It would serve no useful purpose to set out a description of the property here. The property was taken by Ida Less subject to charge of $140 a month in favor of Gussie Less, her portion of which amount was $46.66 per month. The property was also subject to a mortgage to the Commonwealth Farm Loan Company. When the mortgage to the Commonwealth Farm Loan Company matured, Ida Less refused to pay any portion of it, and the heirs paid the mortgage debt, and filed suit against Ida Less for contribution. She paid her part, which was $8,166.40. In the same suit the amount due Gussie Less by Ida Less was fixed at $4,209.22, with interest. This was declared a lien on the lands set aside to Ida Less as dower. She was, however, given the privilege to pay this amount due Gussie Less at $46.66 a month.

One of the buildings which was assigned to Ida Less as part of her dower was a two-story brick business building, which was destroyed by fire. Ida Less had no insurance, but the reversioners were protected, and collected $3,000.

Ida Less did not reside on the homestead after the death of Isaac Less. The homestead consisted of more than a block of ground with a two-story frame house and outbuildings. It is alleged by appellees that the houses and barns and fences upon the farming lands were permitted gradually to disintegrate, with very little if any repairs or replacements, and several of the houses and barns, at the time this suit was filed, were completely gone. All of them were practically uninhabitable and unfit for use. That the ditches on the farming lands had been permitted to grow up and fill up, were not cleared

out, and thickets were permitted to grow up all over these lands, and about 300 acres of the 835 acres of land, at the time suit was filed, was laying out, waterlogged, covered with thickets and trees, some of them as large in diameter as a stovepipe, and the entire farm was rapidly reverting back to its natural state. Appellees also alleged that the garage building was likewise neglected. The windows were knocked out, and same was in bad repair in a great many ways; that this condition was progressing, and getting worse each year. They also alleged that Ida Less had ceased to make her monthly payment of $46.66 per month to Gussie Less, and that, in order to save their properties and other lands, the appellees were compelled to make these payments, because it was a lien on their land as well as on the life estate. Ida Less had also failed to pay the taxes, and appellees redeemed the land themselves.

The testimony was voluminous and conflicting. The chancellor appointed a receiver, and, after hearing the evidence, entered a decree reforming the deed; second, rendered judgment in favor of Gussie Less against Ida Less Kory for $4,209.22, with interest from March 24, 1922, at 6 per cent. per annum, less payments made by Ida Less Kory to Gussie Less, and less all payments made to Gussie Less by the other appellees; and, after crediting these amounts, he found against Ida Less Kory in favor of Gussie Less in the sum of $1,430.21, and held that this sum should bear interest from the date of the decree until paid at 6 per cent. per annum.

The chancellor also entered a judgment in favor of the appellees other than Gussie Less against Ida Less Kory for the sum of $1,999.04, with 6 per cent. interest, and also found against Ida Less Kory in favor of the appellees other than Gussie Less in the sum of $415.41 for taxes paid on the dower lands of Ida Less Kory, June 8, 1926, and also the sum of $195.65, taxes paid on said dower lands December 27, 1927, said sums amounting to $685, with interest at 6 per cent. from the date of the decree.

The court also said that the appellees should pay eight-ninths of the improvement district taxes, and fixed the amount in his decree, which was $135.04, the part that appellees should have paid, and decreed that this sum, having been paid by appellant, should be deducted from the $685, leaving a balance due plaintiffs by Ida Less Kory for taxes of $549.96, with interest thereon from the date of the decree. He also decreed a lien, and provided that the amount should be paid out of the funds in the hands of the receiver within 60 days from the date of the decree, and, if payment was not made, the property should be sold by a commissioner.

Ida Less Kory denied the allegations of plaintiff's complaint as to waste and as to all other matters, except the amount due Gussie Less and the taxes, and alleged that they had offered to pay the taxes, but refused to pay illegal penalties. She also resisted the appointment of a receiver.

The court entered a decree against the appellant for $5,112.85 in favor of the appellees, other than Gussie Less, for waste, and decreed that the amounts found against the appellant should be credited with the amounts that appellees were due appellant, and made a finding, after making said deduction, for damages to houses, barns and farm lands of $4,211.51.

The chancellor also found that the receiver, after making the disbursements mentioned, had approximately $5,000 on hand, and that exceptions had been filed to the report by the appellant, and that these would be considered later. He provided that, if the net amount found against Ida Less Kory for waste was not paid within 60 days, the lien should be enforced by a sale of the dower property. He also decreed that there should be no forfeiture of the life estate, and that no decree should be rendered against Beloate. He also decreed that appellees were entitled to no damages by reason of waste to the fences, and that they were not entitled to any damages for loss of rental during the period of alleged rehabilitation of the lands.

The court held that, except the judgment for improvement district taxes, the cross-complaint of Ida Less Kory should be dismissed, and that the cross-complaint for rental claimed on the Mozier house should be dismissed without prejudice. He directed Ida Less Kory to pay the sum of $65.50 for stenographic services, and that the parties should pay their own costs, except the cost of receivership, and that that should be paid by the appellant. He also denied the petition of the receiver to be permitted to employ counsel, and allowed the receiver the sum of $600 additional for his services in full. He dissolved the receivership, and directed the receiver to file his report within 60 days. He also directed the receiver to pay into the registry of the court moneys collected in the receivership not heretofore paid out, and directed the clerk to issue his receipt to the receiver and hold the moneys and properties subject to the further orders of the court.

The decree also provided that Ida Less Kory might appeal from any portion of the judgment she desired, but that, if she desired to appeal from the entire judgment, she should give a surety bond in the sum of $7,125.41; and if she desired to appeal from the judgment of waste only, that she should give a surety bond for not less than the principal sum, said bond to cover interest and costs. It was further provided in the decree that, if the appeal is from the judgment for waste only, the clerk should pay the sum of $1,430.21 to Gussie Less, and $1,483.69 to the other appellees.

It is contended by the appellant that the receivership was illegal. After a careful consideration of all the evidence, we have reached the conclusion that, under § 8600 of Crawford & Moses' Digest, the court was justified in the appointment of a receiver. That section reads as follows:

"Whenever it shall not be forbidden by law, and shall be deemed fair and proper in any case in equity, the court, judge or chancellor shall appoint some prudent

and discreet person as receiver, who shall take an oath faithfully, impartially, diligently and truly to execute the trust reposed in him, and shall also give bond with good and sufficient security, to be approved by the court or judge or chancellor, in such sum as may be deemed sufficient, to the State of Arkansas, for the benefit of all persons in interest, conditioned that he will faithfully discharge the duties incumbent on him, and faithfully account for and pay into court, at such times as the court or law may prescribe, or according to the order of the court, all moneys or assets which shall come to his hands as such receiver in the case, which shall be filed, and a certified copy thereof shall be received as evidence in all courts."

We agree with the statement quoted by appellee from the case of *Franklin* v. *Myer,* 35 Ark. 101, that: "It is a power to be exercised by judges in vacation with great circumspection, as it is harsh and dangerous, but one within their discretion." It is harsh and dangerous, but it was within the discretion of the court to make the appointment, and we think, from a careful consideration of all the evidence on this subject and the result of the receiver's management, that the action of the court in making the appointment was justified.

The appellant had failed to pay the taxes, and failed for approximately two years to pay the $46.66 a month due Gussie Less, and it is admitted by the appellant that she permitted the lands to become delinquent, although she says she had no intention of permitting the lands to get beyond her. It is also admitted that she had failed to pay the amounts due Mrs. Gussie Less, but they say they tendered this amount, or agreed to pay it into the Federal court. It is shown that the receiver so managed the property that he secured tenants for all of it except about 20 acres, and he testified he would have a tenant for that, whereas, according to the proof, there were about 300 acres vacant without tenants when he took charge.

The appellant next contends that the evidence does not show that appellant was liable for waste.

"The general rule of law, however, in respect to waste, is that the act must be prejudicial, or work a substantial injury, to the inheritance, or to those who are entitled to the reversion or remainder, and it may be committed of houses, gardens, orchards, lands, or woods. Such injury to the inheritance may be committed by diminishing the value of the estate, although it need not consist of loss of market value, but may also be caused by increasing the burdens upon the estate, destroying its identity, or impairing the evidence of title; and if the acts committed substantially injure the inheritance, they may constitute waste, although they increase the pecuniary value of the estate. The refusal or neglect of a tenant to pay current taxes, which he is under an obligation to pay, whereby the premises are sold, or are subject to sale, constitutes waste. But mere injury to the reputation of real estate, or the supposed diminution of its value resting on whimsical or emotional grounds, or arising from dictates of custom or taste, do not constitute waste; nor ordinarily will the consequences of waste attach where the injury to the inheritance is trifling or inappreciable." 40 Cyc. 501 *et seq.;* 27 R. C. L. 1011.

It will be seen that, in order to constitute waste, the life tenant must be guilty of some act or omission to the injury of the persons entitled to the inheritance; a wrongful act or omission on the part of the life tenant which results in permanent injury to the inheritance. It is a violation of the obligation of the tenant to treat the premises in such manner that no harm be done to them, and that the estate may revert to those having the reversionary interest without material deterioration.

In the instant case there were numbers of witnesses who testified for both appellant and appellees on the question of the condition of the premises at the time the appellant got possession and at the time suit was brought. There was a hopeless conflict in the testimony. Appellant contends that a greater number of witnesses testified that there was no waste, or rather that the condition

of the property was as good as when she took charge of it, and contends that this constitutes a preponderance of the evidence. The number of witnesses alone does not necessarily constitute a preponderance of the evidence. The evidence in this case, as we have said, is in hopeless conflict, but the strongest testimony probably with reference to waste is that of the receiver, and yet in the short time that he had the management of the property he was able to rent the entire property, except about 20 acres, and we think, when this evidence is considered with all the other evidence, the preponderance clearly shows that there was no waste so far as the property was concerned. We think the clear weight of the evidence shows that the interest of the reversioners was not injured. In other words, that in this respect the testimony clearly shows that there was no waste.

Chancery cases are tried *de novo* here, and while, unless we can say that the findings of the chancellor are against the preponderance of the evidence, his finding will be affirmed, yet when we find that the preponderance of the evidence is against the finding of the chancellor, then his finding must be set aside.

After a careful consideration of the entire testimony, we have reached the conclusion that the chancellor's finding against the appellant as to waste consisting in damage to the property is against the preponderance of the evidence. As to all other issues, we think the finding of the chancellor is supported by a preponderance of the evidence. It would be impracticable to set out the evidence on these issues at length, and, as to the finding against the appellant on the amount due the appellees for what they had paid Gussie Less and the amount still due Gussie Less, there is no dispute. Appellant admits she owes these amounts, and the chancellor correctly found against her in the amount mentioned in the decree as to these items.

The appellees contend that the court erred in adjudging that no forfeiture of the life estate of the defend-

ant Ida Less Kory should be declared. Their contention is that the life estate should have been forfeited, and they call attention to § 10054, C. & M. Digest. That provides, however, that if the tenant shall neglect to pay the taxes so long that such lands shall be sold for the payment of taxes, and shall not redeem within one year after such sale, such person shall forfeit to the persons entitled to the remainder or reversion of the estate that he may have in such lands. A sufficient answer to the contention here is that the tax sales were void, as found by the court.

Appellees also call attention in this connection to the case of *Magness* v. *Harris,* 80 Ark. 583, 98 S. W. 362. Among other things, the court said in that case: "In *Swan* v. *Rainey,* 59 Ark. 364, [27 S. W. 240], the facts were that the life tenant, while in possession of the land, failed to pay the taxes, and purchased it at the tax sale, and the court held that the purchase amounted only to a payment of the taxes, that the sale was therefore void, and that no forfeiture of the estate of the life tenant was worked under the statute in question. The court there said: 'The sale being void and the taxes paid, there was nothing to redeem, and consequently no redemption was required.' "

Continuing, the court said: "It follows from this that a void sale does not work a forfeiture to a remainder-man of the estate of the life tenant. The statute in question manifestly has reference only to a valid sale. And it is a sale for taxes, not a mere failure to pay taxes within the time prescribed by law, which works a forfeiture, as the statute provides that if the life tenant 'shall neglect to pay taxes thereon so long that such lands shall be sold for the payment of taxes, and shall not, within one year after such sale, redeem the same according to law, such person shall forfeit * * * all the estate which he or she, so neglecting as aforesaid, may have in said land.' The manifest purpose of the statute is to afford the remainderman an opportunity to redeem during the last of the two years allowed by law for redemp-

tion of lands from a valid tax sale, and to cause a forfeiture of the estate of the life tenant for failure to redeem from such sale within the first year.''

We therefore think the court was correct in holding that there should be no forfeiture of the life estate.

It is next contended by appellees that the court erred in adjudging that eight-ninths of the special improvement taxes paid by appellant upon the dower lands should be adjudged against the appellees.

We said in a recent case: ''Obviously, the question whether the life tenant or the remainderman must ultimately bear the cost of a public improvement may be determined by the provisions of the instrument by which the life estate is created. We hold that the assessments for premanent improvements must be ratably and equitably apportioned between the life tenant and the remainderman.'' *Hicks* v. *Norsworthy*, 176 Ark. 786, 4 S. W. (2d) 897.

In the above case the authorities were reviewed, and the rule was announced that the life tenant must pay the ordinary taxes, and, if improvements are made that are temporary and benefit the life tenant only, the life tenant must pay these assessments. But where the improvements are of a permanent character, the assessments must be ratably and equitably proportioned between the life tenant and the remainderman.

The court in this case evidently undertook to determine, and did determine that the improvements for which taxes or assessments were paid were permanent, and, considering the age of appellee and the character and permanency of the improvement, arrived at what seemed to him to be a just and equitable adjustment. We think the finding of the court was correct. Appellant argues, however, that in the case of *Hicks* v. *Norsworthy* we laid down no rule for the proportionment. No rule could be laid down that would of itself determine the proportion or percentage that each party should pay in all cases. The rules called attention to by appellees them-

selves are stated in 21 C. J. 958, 17 R. C. L. 639, and *Bobb* v. *Wolff*, 54 Mo. App. 515.

Appellees are correct when they state that the question whether it must be borne by the life tenant or the remainderman or proportioned between the two depends to a large extent upon the circumstances of the particular case, and especially on the probable duration of the improvement as compared with the expectancy of the life tenant.

Appellees have cited a great many authorities, which we do not think it necessary to review, because the rule in this State has already been settled, and we think the chancellor undertook to settle the matter, and did settle it in the instant case in accordance with the rule announced by this court.

It is next contended by the appellees that the court erred in adjudging that no damage should be allowed to appellees for the item of $7,555 loss of rental during the period of rehabilitation of the lands. We think the court's finding as to this item is correct, and supported by the great weight of the evidence.

Appellees state that the uncontradicted testimony on the part of the appellees shows that it will take at least five years to rehabilitate the dower lands under the best of husbandry, and during that time there will be a loss of rent of $7,555. It is true that there was such testimony, but it was contradicted by other evidence, and, in addition to that, the undisputed proof shows that the receiver was able to rent all the lands of the dower estate. We think the preponderance of the testimony supports the finding of the chancellor as to this item.

It is next contended by the appellees that the court erred in not adjudging damages to the appellees by reason of waste to fences. The testimony does show that some of the fences were not repaired and kept up, but the undisputed testimony also shows that a fencing district was established which included the lands in controversy, and there was no occasion to have fences. The chancel-

lor's finding as to this item is supported by the preponderance of the evidence.

It is next contended by the appellees that judgment should have been rendered against W. E. Beloate, as well as Ida Less Kory, and that the court erred in dismissing the complaint as to W. E. Beloate. Without setting out the testimony, we think that the testimony shows that Beloate had no such interest in the land as would entitle appellees to judgment against him, and that the court correctly dismissed the cause of action as to him.

The cost of the receivership should be divided, each party paying one-half.

It follows from what we have said, that the decree of the chancery court awarding damages against appellant for waste must be reversed, and the decree otherwise affirmed. The case is therefore reversed, and remanded with directions to enter a decree in accordance with this opinion.