BELOATE *v.* LESS.

4-4582

Opinion delivered April 5, 1937.

*Richardson & Richardson, W. A. Jackson* and *Horace Chamberlin,* for appellant.

*White, White & White, O. C. Blackford* and *Smith & Judkins,* for appellees.

GRIFFIN SMITH, C. J. Ida Less Kory, defendant and cross-complainant in the Lawrence chancery court, secured judgment against W. E. Beloate for $5,203.14. Beloate is here on appeal. Others have appealed from certain provisions of the decree in which Mrs. Kory was

given judgment. The litigation is somewhat involved, and a detailed statement is necessary.

Isaac Less, of Walnut Ridge, was divorced from Gussie Less in 1905. A number of years later he remarried, and died in 1917. His second wife remarried, and is now Ida Less Kory.

In September, 1935, Jake Less, Morris Less, Minnie Less, Marion Less, and Emily Less Meyer, as sole heirs of Isaac Less, filed suit against Ida Less Kory, W. E. Beloate and others. They alleged that Mrs. Kory, as the widow of their father, was properly in possession of lands assigned to her as dower, and that Beloate was her agent, she being a resident of St. Louis. In substance, the charges were that through negligence in handling the property it has deteriorated; that general and special taxes were not paid, and that part of the property had forfeited and had been sold. For these reasons the possession they would take upon termination of the life estate was being impaired. It was claimed that total tax delinquencies amounted to $6,020.83. They asked that the rights of Ida Less Kory as life tenant be forfeited, and that they have other relief.

Without notice to the defendant, Beloate, Erwin Spikes was appointed receiver. On September 18, 1935, he made a report showing that the estate consisted of approximately 846 acres of farm lands in Lawrence county; also four buildings in Walnut Ridge which were yielding $115 per month in rents.

Beloate answered the suit of Jake Less *et als.*, and in a cross-complaint asked damages of $2,500, and prayed that the receiver be discharged.

In answer to the complaint of Less *et als.*, Mrs. Kory admitted plaintiffs were the sole heirs of Isaac Less; that the real property in controversy was set aside as her dower; that W. E. Beloate was her attorney and agent, and as such was in control of the property, and that the estate had forfeited and had been sold for taxes. By way of cross-complaint, she alleged a written contract with Beloate, by the terms of which he was obligated to pay all taxes, keep up repairs, and pay expenses, and in

addition remit to her $3,000 annually. She charged that, unknown to her, Beloate had failed to pay the taxes, and as a consequence of this negligence "and wilful failure" certain third parties had become alleged owners of the property. She further alleged that through mismanagement the property was deteriorating, that Beloate knew of the tax forfeitures, and failed to notify her of the foreclosures; that though repeatedly requested to do so, he refused to supply her with statements or to make a proper accounting; that in 1929 she and Beloate adjusted outstanding differences and agreed that thereafter Beloate should continue to act as agent under the existing written contract whereby she was to receive the net sum of $3,000 annually, and Beloate was to pay taxes and maintain the property, and that he had defaulted in these obligations.

An answer and cross-complaint to Mrs. Kory's pleadings were filed by Beloate. It was true, he said, that in 1929 there was an adjustment of accounts, but it did not include certain contingent balances of which Mrs. Kory was well aware.

Reference is here made to an opinion delivered by this court on November 11, 1929. *Kory v. Less,* 180 Ark. 342, 22 S. W. (2d) 25. The decision was on an appeal from the Lawrence chancery court where the heirs of Isaac Less brought suit against Ida Less Kory and W. E. Beloate. The same property involved in this appeal was the basis of the older controversy. It was sought by the former proceeding to have a forfeiture declared on the life estate of Mrs. Kory; to have a lien declared in favor of Gussie Less for $140 per month by reason of a settlement made prior to her separation from Isaac Less; to restrain Ida Less Kory and W. E. Beloate from committing further waste, and to have judgment for damages. On application of plaintiffs, a receiver was appointed, and after a hearing judgment was entered against Mrs. Kory for certain sums. A part of the opinion rendered by this court on that appeal reads as follows: "After a careful consideration of the entire testimony, we have reached the conclusion that the chan-

cellor's finding against the appellant (Mrs. Kory) as to waste consisting in damages to the property is against the preponderance of the evidence. As to all other is-sues, we think the finding of the chancellor is supported by a preponderance of the evidence." The opinion also says: "The property was taken by Ida Less subject to charge of $140 a month in favor of Gussie Less, Mrs. Kory's portion of which was $46.66 per month. The property was also subject to a mortgage to the Common-wealth Farm Loan Company. When the mortgage to the Commonwealth Farm Loan Company matured, Ida Less refused to pay any portion of it, and the heirs paid the mortgage debt, and filed suit against Ida Less (Kory) for contribution. She paid her part, which was $8,166.40. In the same suit the amount due Gussie Less was fixed at $4,209.22, with interest. This was declared a lien on the lands set aside to Ida Less (Kory) as dower. She was, however, given the privilege to pay this amount due Gussie Less at $46.66 a month. * * * After crediting cer-tain amounts the chancellor found against Ida Less Kory in favor of Gussie Less in the sum of $1,430.21."

Beloate, in the suit now on appeal, admitted execu-tion of the original agency agreement of 1917, but said that in 1918 it was found that management of the prop-erties required more of his time than had been antici-pated, and, due to fixed obligations against the property, there was doubt that the contract was of material value to him. Therefore, about February 1, 1918, he went to St. Louis and talked with Mrs. Kory. At that time, he says, by oral agreement, he was released from his obli-gation to make monthly and yearly reports. He agreed to meet payments of $46.66 due Gussie Less and to pay one-third of the interest accruing on the Commonwealth Farm Loan Company mortgage until its maturity, and at maturity to pay that portion of the principal charge-able against the dower interest. Such payments being liens on the life estate, he was himself, in turn, to have a lien as security. If at any time Mrs. Kory concluded to sell her estate or terminate the agency, he should be paid. He construed Mrs. Kory's cross-complaint as can-

cellation of the agency, having the effect of maturing her obligations to him under the terms of the 1918 oral modification of the written contract. There was an admission that the lands had forfeited for taxes, with the explanation that income had not been sufficient to meet payments, remit $3,000 per year to Mrs. Kory, maintain repairs, and to discharge interest payment due him on the Gussie Less and Commonwealth Farm Loan Company debts he had paid, of which Mrs. Kory had knowledge. It was alleged, and not denied, that all tax sales were void; also, that there had been an agreement that tax payments should be deferred as long as possible after sales, or until the income from the property was sufficient to discharge them.

The further contention was made by Beloate that many of the issues raised in Mrs. Kory's cross-complaint were included in and concluded by the decision in *Less v. Kory, supra*. After that decision had been rendered he went to St. Louis and met Mrs. Kory and her attorney (Mr. Powell), and they settled "all matters of rents, income, and disbursements up to and including December 31, 1928, striking a balance and agreeing that all matters, exclusive of the judgments in favor of Gussie Less and the Commonwealth Farm Loan Company were fully and satisfactorily settled, and such settlement is pleaded as a bar to any right upon the part of Mrs. Kory to go behind the same." He then alleged that Mrs. Kory was indebted to him in the total sum of $21,021.36.

Mrs. Kory, in her cross-complaint, set out a balance of $10,000 due her on rents, with interest, to which should be added $2,120 for notes executed in her favor by Beloate, and sums otherwise due.

The Jake Less plaintiffs have appealed from that portion of the decree denying judgment in their favor for alleged waste, and from the court's refusal to cancel the life estate.

The decree directs that the life estate of Mrs. Kory be not canceled; that the contract of 1917, between Mrs. Kory and W. E. Beloate, as restated in 1929, be canceled; that Mrs. Kory have judgment against W. E.

Beloate for $2,987.67 on unpaid notes and interest, and for the further sum of $2,215.47 as the amount of unpaid rents, after allowing credit equitably due; that the claim of W. E. Beloate against Mrs. Kory for monies paid the Commonwealth Farm Loan Company and Gussie Less, and for other items, be denied; that the cross-complaint of W. E. Beloate against Jake Less and others as heirs of Isaac Less be dismissed for want of equity, and that the receivership continue for such further orders of the court as may be necessary in redeeming property and paying all legal taxes against the estate, and in directing necessary repairs.

The judgment against W. E. Beloate, and denial of his claims against Mrs. Kory, are based upon a finding by the chancellor that "there was a complete and full settlement between the parties in February and March, 1929, as of January 1, 1929, and accounting should date from January 1, 1929."

This, in effect, was a dismissal of claims growing out of transactions from 1917 to 1929—a period of twelve years. One statement read in evidence, inclusive of the years 1917 to 1927, showed receipts of $77,346.90, and expenditures of $86,145.39. It is contended by Beloate that his payments were far in excess of receipts, and that he mortgaged his own and his wife's property to discharge obligations incurred during the period of his agency.

The record here covers 458 pages, and in *Less* v. *Kory,* it consisted of more than 1,200 pages. Beloate repeatedly stated that he did not keep books, and says that in 1918, when oral modification of the contract of 1917 was had, he told Mrs. Kory that, in order to properly keep books, an expenditure of $50 per month for help would be required.

It is obvious that the method of accounting was woefully incomplete, and it must have been expensively inaccurate. As to this, Mrs. Kory could not complain, if she made the agreement which Beloate relies upon to work a modification of the written contract. She was interested primarily in receiving $3,000 annually as rent-

als, and Beloate was to pay expenses from the gross income. Mrs. Kory would not be affected by a failure to record transactions, unless, by reason of drouth or crop failure, the income proved insufficient to pay expenses and rents, in which event accurate records might have been important.

The written evidence of settlement in 1929, to which the chancellor gave effect, included a memorandum of items mentioned in the decree then pending in the Supreme Court on appeal, and a reference to the receiver's report. The agreement, omitting the introductory memorandum, follows:

"Agreed 3/24/29 between Mrs. Kory and Mr. Beloate that of the above items totaling $6,596.54, if the Supreme Court holds Mrs. Kory (in receivership case) shall not pay more than $2,483.69 (which is the above item of $1,483.69, plus not more than $1,000 for the other four items of waste). Then Mrs. Kory will pay out of receivership funds said sum of $2,483.69 (or less as Supreme Court may find) and also allow Mr. Beloate a credit of $500 which she is to advance to him at this time for his use on Mr. Chamberlin's fee. Otherwise—if Supreme Court holds she is to pay more than the aforesaid sum of $2,483.69, then no credit of said $500 or any part thereof is to be allowed Mr. Beloate, but he is to pay same in full and also one-half of the said sum of $1,483.69.

"Out of receivership funds, which Mrs. Kory gets from receiver, she will advance or loan to Mr. Beloate the sum of $500 (on his note) with which to pay Mr. Chamberlin; and also, the sum of $250 to Mr. Beloate (on his note) with which to pay on printing briefs, abstracts, etc. Said total sum of $750 in Mr. Beloate's notes to be —one note for $375 for one year, and one note for $375 for two years.

"Mr. Beloate will take care in full on and of his own account any and all judgments rendered in East Arkansas Lumber Company cases; also all fees to Mr. Chamberlin; also items of $89, $385, and $75, heretofore referred to, to Mrs. Kory; also take care of all litigation, current and to accrue; also $3,000 per year rentals (be-

ginning January 1, 1929)—and all other matters under contract; also all current, future and delinquent taxes; this memo not being meant to include all items of agreement and expense, but only those items above referred to and to be exclusive of none other.

"If Mr. Beloate can do so, as he has already proposed to Attorneys Smith and Gibson, it is agreeable that Smith and Gibson collect Carty judgment for R. C. P. without cost of collection, out of the proceeds of which R. C. P. will lend Mr. Beloate the sum of $200 on his note for one year—to pay on East Arkansas Lumber Company claim, provided said claim and suit therefor shall be dismissed and the balance of said claim settled by Mr. Beloate's notes to East Arkansas Lumber Company in equal sums in one and two years."

In appellant Beloate's abstract of testimony there are references to correspondence with Mrs. Kory, but the letters are not abstracted. As a consequence it is difficult to construe some of appellant's contentions. For example, important paragraphs in letters exchanged between Beloate and Robert C. Powell (Mrs. Kory's attorney) are not brought into the record by appellant, although at the time the 1929 agreement was reached Mrs. Kory's claimed balance was $15,916.77.

It is shown that the parties had formerly conferred, for on March 4 Beloate wrote Powell: "I would like to have a letter from you explaining the agreement entered into between Mrs. Kory and myself on the 24th, with reference to the amount due her under our contract, cost of the Less v. Kory litigation, past and future, and other financial arrangements made on that day." The record as abstracted by appellee discloses letters from Beloate questioning specific items, and nowhere does he mention the controverted Commonwealth Farm Loan Company and Gussie Less payments.

The contingently payable indebtedness Beloate now claims under the terms of his oral agreement of 1918 was raised for the first time in the chancery proceedings from which this appeal comes.

The circumstances under which oral modification of the written contract was effectuated are explained by Beloate, who says that with termination of litigation in the Less-Kory proceedings, he went to St. Louis on February 24, 1929, and met Mr. and Mrs. Kory and Mr. Powell in the latter's office; that after brief conversations Powell took a statement from his letter files, prepared from data supplied by Mrs. Kory, and handed copies to him (Beloate) and to Mrs. Kory. "At the same time," continued Beloate, "Powell opened the door to his library, and said he supposed Mrs. Kory and I would want a private conversation about the matter. I went into the library with Mrs. Kory and read the statement * * * and said: 'Mrs. Kory, you know this is not correct.' * * * I had filed an account showing that expenses exceeded income by $8,798.49. When I told her I had no intention of trying to hold her for this, she said she didn't know whether her account was right or not, and if satisfactory with me, we would just wipe the account out which included certain items, but did not include anything I had paid Mrs. Gussie Less, nor the Less boys for the Commonwealth Farm Loan debt, that by agreement was to be kept separate from my statement. She then told me that she had never explained the matter to Mr. Kory, and didn't want him to know anything about these matters, and said that what he didn't know wouldn't hurt anything, and she would rather not have it explained. She asked me to go back into Powell's office and just make a statement that we had wiped out these matters, one against the other. When we got back in, I did so, and told them that it was the understanding that the amount in the receiver's hands was to be used to pay the judgment in favor of Gussie Less for the balance due on her life estate, and the expense of litigation."

It will be observed that Beloate fixes February 24 as the date of this conference. The memorandum is dated March 24. While Mrs. Kory was not recalled to deny Beloate's testimony that a collateral oral agreement was made in the privacy of Powell's library, she had previously testified that on November 17, 1929, she

received a statement from Beloate (filed as an exhibit) designated as "Memo of amount due Mrs. Ida L. Kory from W. E. Beloate." With respect to this statement, Mrs. Kory testified: "I do not know the exact amount I received from Mr. Beloate from 1917 to 1928, at which time he owed me over $13,000. I agreed with him that if he would live up to the contract and pay all taxes and keep property in good order, I would waive the delinquencies from 1917 to 1929 and start all over again. He submitted me a statement showing that he owed me $13,-166.77. I believe he owes me more than this, but I let it go at that. I also have his note for over $4,700, which is dated 1924 and includes interest."

Exhibit "E" was attached to Mrs. Kory's deposition. It is entitled: "Memo. of settlement for year 1929 between Mr. Beloate and Mrs. Kory, dated at St. Louis Sunday, November 17, 1929." In this writing Beloate extended a credit of $3,000 for 1929 rent, against which he charged $1,000 "already paid." He then credited three items—$89, $385, and $75. There is another credit ($1,000) "due Mrs. Kory from chancery clerk retained in receivership case to cover East Arkansas Lumber Company garnishment and which will go to Mr. Beloate and with which he intends to pay East Arkansas Lumber Company." Still another item is "for briefs advanced to Mr. Beloate, receivership appeal, $250." The credits thus given amount to $3,799. Beloate then takes personal credit for $500 as attorney's fee due or paid to a third party; $1,483.69 as reflected by "Less boys" judgment against Mrs. Kory, and interest of $74.18, or $1,557.87 for the two items, "which Mr. Beloate agrees to pay." All told, these credits are $2,057.87, leaving a balance of $1,741.87 in favor of Mrs. Kory, which is handled in the following manner: "Notes of Mr. Beloate already given and now in Mrs. Kory's hands, two of $375 each, $750; notes to be given, $550; check given to-day, $441.13—total, $1,741.13."

Mrs. Kory testified that she did not receive the $1,000 reserved by Beloate for payment to East Arkansas Lumber Company; also, that the lumber company

controversy was settled in her favor, and thereafter the indebtedness was non-existent. She says that after November, 1929, she did not receive any other statement, although Mr. Kory constantly demanded such. The deposition dated November 22, 1935, closed with this statement: "He owes me up to date over $17,000, according to my contract."

Beloate admitted sending the November statement, but said that at the time he wrote it he had paid Mrs. Kory more money than he had collected as rent. "From 1930 to September, 1935, inclusive, I collected $14,397.44 off the farm and town property. I paid the following: Taxes, $2,596.05; to Mrs. Kory, $3,595; and for repairs and court costs, $3,177.02. I credited on the amounts collected by the Less heirs from me on the Gussie Less and Commonwealth Farm Loan Company, $8,359.52. Mrs. Kory received from W. E. Beloate and the Carty judgment $5,352.65 * * * and the notes amounting to $2,131.72. Amount received by Mrs. Kory, $5,553.65."

The chancellor's finding was that the notes and interest to date of judgment amounted to $2,987.67 and that Mrs. Kory was entitled to a further sum of $2,215.47 as the balance equitably due on rents.

The method of calculation by which this result was arrived at is not clearly shown, but there is an inference that Beloate's admission that he had collected $14,397.44 was accepted as the best evidence. Against this the chancellor credited Beloate with the items of $2,596.05, $3,177.02, and $3,595—a total of $9,368.07. Interest on the five notes to date of judgment (July 6, 1936) would amount to $963.66. Judgment on the notes therefore should have been for $3,095.38, instead of $2,987.67, a difference of $107.71. Deducting $9,368.07 from $14,-397.44 leaves $5,029.37, and Mrs. Kory's judgments, without interest, amount to $5,203.14. It will thus be seen that if, in fact, the chancellor's results were arrived at by this process, Mrs. Kory received less than she was entitled to. Beloate mentions an item of $858.14 representing one-ninth of unpaid taxes, for which he claims

Mrs. Kory was liable, but this figure, if allowed as a credit to him, does not balance with total receipts.

Although Mrs. Kory is a cross-complainant, she has failed to point out the particular inaccuracies of the chancellor's findings, and will be precluded from objecting to the result. The appellant Beloate cannot complain, as to these items, because the amount adjudged against him is less than the analysis shows.

In *Less* v. *Kory,* referred to *supra,* § 10054, Crawford & Moses' Digest, was cited. The law provides that if a life tenant neglects to pay taxes and the lands are sold, such tenant forfeits the estate. It was held, however, that where the tax sale, under which a remainderman claims a forfeiture of a life estate, is void, the chancellor may properly refuse to declare a forfeiture.

The appellant, Beloate, in his answer and cross-complaint, alleged that all of the sales were void. The proof offered was not sufficient for this court to pass upon validity or invalidity of the sales. A finding by the chancellor that the life estate should not be forfeited at least raises a presumption here that he regarded the sales as void or voidable.

The alleged verbal agreements between Beloate and Mrs. Kory involving an indefinite obligation with respect to payment of the Commonwealth Farm Loan and Gussie Less debt are vague and uncertain. Conduct of the parties does not justify a belief that it was intended to become effective in the manner here urged. The chancellor was not in error in refusing to enforce it.

Affirmed.